# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UWIMANA ZAKIYA,<br><br>    Plaintiff<br><br>v.<br><br>STATE OF NEVADA, on relation of the DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF WELFARE AND SUPPORTIVE SERVICES,<br><br>    Defendant | Case No.: 2:18-cv-00846-APG-BNW<br><br>**Order Granting Motion for Summary Judgment**<br><br>[ECF No. 23] |

Plaintiff Uwimana Zakiya sues the State of Nevada *ex rel.* Department of Health and Human Services, Division of Welfare and Supportive Services (DWSS) for sexual harassment and retaliation under 42 U.S.C. §§ 2000e-2(a)(1)-(2) and 42 U.S.C. § 2000e-3(a). She alleges that Josimar Cordoba-Castillo, her co-worker and supervisor during part of the alleged instances of misconduct, sexually harassed her and that she was retaliated against after reporting the conduct to her subsequent supervisor Brittany Gilbreath. I previously granted DWSS's motion to dismiss with leave for Zakiya to amend her complaint to assert facts demonstrating that she timely filed a charge with the Nevada Equal Rights Commission and that she has a viable claim of retaliation. Zakiya filed an amended complaint, which added more factual allegations, including that Cordoba made ongoing unwelcome sexual advances from April 2017 through around October 2017 and that she feared her job was in jeopardy if she reported his conduct. She also provided details of a work incident involving alleged threats she made about her supervisor, police being called to her home, an investigation, and her subsequent suspension from work.

DWSS moves for summary judgment, arguing that Zakiya has failed to present evidence supporting a quid pro quo theory of harassment or that any sexual harassment created a hostile work environment that altered the conditions of her employment. DWSS also argues that Zakiya cannot establish a retaliation claim because she failed to show any adverse employment action and a causal link between that action and protected activity. Finally, DWSS argues that Zakiya failed to exhaust her administrative remedies because her amended complaint is not consistent with the original theory of the case. Zakiya opposes DWSS's motion. I grant DWSS's motion because Zakiya failed to exhaust her administrative remedies for her sexual harassment claim and she was not retaliated against for engaging in protected activity.

## I. BACKGROUND[1]

Zakiya started working for DWSS in April 2016. ECF No. 23-1 at 2. From August 15, 2016 through June 5, 2017, Cordoba-Castillo was her supervisor at the Lewis Complex. *Id.* Cordoba-Castillo sent her many text messages from the time he became her supervisor through September or October 2017 that were sexual and inappropriate. ECF No. 23-4 at 2-3. He would go to her desk and ask her to delete the messages in front of him. *Id.* at 3. Further, between April and October 2017, Cordoba-Castillo would stand behind Zakiya's chair and rub her shoulders. *Id.*

---

[1] Zakiya argues in her response that some of DWSS's exhibits constitute inadmissible hearsay. She objects to the use of a human resources officer's affidavit, the EEOC investigator's affidavit, and the order of the administrative hearing. DWSS responds that it will be able to present all of this information in admissible form at trial. I agree. Even if the evidence is not currently in admissible form, DWSS need not present it in admissible form at summary judgment. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). DWSS could call witnesses to testify to the underlying facts. Accordingly, I may rely on the exhibits as evidence in this motion.

Zakiya described several specific instances of sexual misconduct perpetrated by Cordoba-Castillo.  The first occurred on April 21, 2017, when Cordoba-Castillo drove Zakiya to a motel room under false pretenses and forced himself on her several times. *Id.*  The second occurred on August 29, 2017, when Zakiya met Cordoba-Castillo at a sex club and he took her to the back room to have sex with her. *Id.*  The third occurred in late September or early October 2017, when Cordoba-Castillo brough Zakiya into an office reading room and groped her and pressed his body against her back. *Id.* at 4.  Zakiya felt she had to go along with these unwanted advances to keep her job. *Id.* at 3.

Brittany Gilbreath became her supervisor in June 2017. ECF No. 23-1 at 2.  Cordoba-Castillo remained in that office until he was promoted and moved to a different location in August 2017. *Id.* at 3.  But he was demoted and returned to the Lewis Complex on October 23, 2017. *Id.*

Sometime in the summer of 2017, Zakiya reported to Gilbreath that she had been sexually harassed by Cordoba-Castillo. ECF No. 23-4 at 4.  She asked Gilbreath not to report anything, but to keep her safe. *Id.*  Later, in October or November 2017, Zakiya reported the conduct to human resources (HR) officer Renee Depaoli. *Id.*  She told Depaoli that while Cordoba-Castillo did not technically rape her, he used his power to engage in sexual activities because she felt she would lose her job otherwise. *Id.*

Zakiya learned that Gilbreath had shared her private information about the sexual harassment to other coworkers, which exacerbated her mental health conditions. *Id.* at 7-8.  On October 18, 2017, Zakiya informed Gilbreath that she had an appointment and would be coming into work late. ECF No. 23-2 at 2.  Later that morning, Gilbreath sent an email to her team asking if anyone had heard from Zakiya. *Id.*  Zakiya arrived shortly after the email had been sent

3

and became upset that an email was sent out that made it appear as if she had disappeared without notice. *Id.* at 3. Zakiya went to the front desk and handed her colleague a doctor's note. *Id.* While conversing with her colleague, witnesses heard her make threatening comments about what would happen if she had to see Gilbreath, with whom she was upset. *Id.* Zakiya left work, and later the police were informed of the situation, visited her house, and determined she was not a threat to herself or others. *Id.*

No charges were brought, and the matter was handled as a human resources problem. *Id.* at 3-4. Zakiya was placed on paid administrative leave from October 24, 2017 through January 11, 2018 while the incident was being investigated. ECF No. 23-1 at 2. Following the investigation, she served a five-day suspension beginning on January 26, 2018. *Id.* Zakiya appealed her five-day suspension. ECF No. 23-2 at 2. The Nevada Department of Administration hearing officer found that, while suspension was appropriate based on her conduct, a three-day suspension would be the proportional response, so Zakiya's suspension was reduced to three days. *Id.* at 10. Zakiya transferred to a different office on January 23, 2018. ECF No. 23-1 at 2.

Zakiya filed a complaint with the EEOC on February 8, 2018. ECF No. 23-3 at 2. The investigator, Dierdre McCain, described that the substance of Zakiya's EEOC charge was that her supervisor exacerbated her medical condition by sharing her information about the incident on October 18, 2017. *Id.* McCain also stated that Zakiya reported that she encountered only one incident of sexual harassment by Cordoba-Castillo, which occurred in the fall of 2016. *Id.* After Zakiya filed her amended complaint, McCain conducted an additional investigation and was unable to find that a timely complaint was made based on the additional allegations or that the allegations of sexual harassment could be substantiated. *Id.* at 3.

4

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## III. EXHAUSTION

"Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). This gives "the charged party notice of the claim and narrow[s] the issues for prompt adjudication and decision." *Id.* (internal quotation omitted). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are

like or reasonably related to the allegations contained in the EEOC charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002). I examine both the EEOC charge and the EEOC investigation to determine what claims I may consider. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (noting that a plaintiff's ability to bring a Title VII claim in court "depends upon the scope of both the EEOC charge and the EEOC investigation"). Therefore, I consider all allegations of discrimination that fall "within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *B.K.B.*, 276 F.3d at 1100.

In determining whether a plaintiff's complaint is reasonably related to the EEOC charge, I may consider several factors, such as "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleges to have occurred." *Id.* A plaintiff's claims are reasonably related to the allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case." *Id.* I construe Zakiya's EEOC charge "with the utmost liberality." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (internal quotation omitted).

DWSS argues that Zakiya failed to exhaust administrative remedies because the allegations in her amended complaint and assertions made in discovery are inconsistent with her original theory of the case. It thus contends it did not have adequate notice of her ongoing sexual harassment allegations or the basis for her retaliation claim. ECF No. 23 at 11. It argues that Zakiya's EEOC complaint alleged an Americans with Disabilities Act of 1990 (ADA) violation, not a hostile work environment due to ongoing sexual harassment. *Id.* at 10. Zakiya responds that she reported the alleged sexual harassment and retaliation to the EEOC, and failing to

6

provide details of multiple instances of sexual harassment does not negate the fact that these instances were encompassed in her charge of discrimination with the EEOC. ECF No. 24 at 10. She argues that, because the conduct was perpetrated by the same person, her amended complaint is consisted with her original theory of the case. *Id.*

Zakiya has not properly exhausted her Title VII harassment claim. In her EEOC complaint, Zakiya checked boxes indicating she was seeking to assert discrimination based on disability, sex, and retaliation. ECF No. 6-1 at 2. Zakiya stated in the short description section that she was subjected to an incident of sexual harassment by a co-worker in April 2017 and that she notified her supervisor in June 2017. *Id.* Zakiya also stated that she became aware that her supervisor, Gilbreath, shared this information, which exacerbated her medical condition. *Id.* She stated she was placed on paid suspension, and later unpaid suspension, and that she believed she was discriminated against because of her disability and retaliated against for engaging in protected activity. *Id.*

For the purposes of this motion, I assume that Zakiya asserted in her amended complaint both a quid pro quo theory and hostile work environment theory of her sexual harassment claim. To support a quid pro quo claim, a plaintiff must show that an employer "condition[ed] employment benefits on sexual favors." *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Nowhere in her EEOC complaint does Zakiya identify Cordoba-Castillo as her harasser or allege that he, or any other supervisor, conditioned employment benefits on sexual favors. And any investigation into Cordoba-Castillo's conduct concluded after Zakiya told the EEOC investigator, McCain, that there was only one instance of harassment that occurred in the reading room. ECF No. 23-3 at 2. Zakiya has failed to show how a quid pro quo claim could reasonably be expected to grow from the EEOC charge she filed and so I will not consider this claim.

7

Similarly, Zakiya has not properly exhausted her hostile work environment claim. To prevail on a hostile work environment claim, a plaintiff must show that "(1) that [] she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison*, 924 F.2d at 875-76.

Zakiya checked the box on the EEOC form indicating that she was filing a claim of sex discrimination and described that "she was subjected to an incident of sexual harassment by a co-worker." But she did not indicate in her charge that the one identified incident of harassment created a hostile work environment. To the contrary, she described being subjected to harassment and defamation of character due to the incident involving Gilbreath, not Cordoba-Castillo. *See* ECF No. 6-1 at 2 ("I became aware that my Supervisor had shared this information with her Supervisor. This information exacerbated my medical condition and I was then subjected to harassment and defamation of character due to my medical condition."). None of her allegations would have put DWSS on notice of conduct sufficiently pervasive or severe to constitute an abusive working environment based on ongoing sexual harassment by Cordoba-Castillo. And as already described, based on the description in the EEOC charge and Zakiya's statements to McCain, the EEOC did not investigate a hostile work environment claim and could not have been reasonably expected to do so. Construing Zakiya's complaint liberally, she has failed to show that her hostile work environment claim was within the scope of the EEOC investigation or that it is consistent with the original theory of her case. *See Swinnie v. Green*, 379 Fed. App'x 665, 667 (9th Cir. 2010) (noting that while plaintiff's EEOC complaint "alleged discrete acts of discrimination" it "would not have put the EEO investigator on notice" of a

hostile work environment claim). Accordingly, I grant DWSS summary judgment as to Zakiya's sex discrimination claim because she failed to exhaust her administrative remedies.

## IV. RETALIATION

However, I may consider Zakiya's claim for retaliation because she properly represented in her EEOC charge that she believed she was retaliated against for engaging in protected activity. ECF No. 6-1 at 2. I have no information about whether McCain investigated Zakiya's claims for retaliation. However, construing Zakiya's EEOC complaint liberally, DWSS was put on notice that Zakiya was asserting a retaliation claim for the purported negative treatment she received, including the harassment and her suspension, after reporting to her supervisor an incident of sexual harassment.

Title VII prohibits retaliation by making it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

"An action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks*, 229 F.3d at 928. Harassment may also constitute an adverse employment action. *See Ray*, 217 F.3d at 1244-45. The harassment must create a hostile work environment that is "sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* 1245.  However, "badmouthing an employee outside the job reference context" does not constitute an adverse employment action. *Brooks*, 229 F.3d at 928.  "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer "to present legitimate reasons for the adverse employment action." *Brooks*, 229 F.3d at 928.  If the employer meets its burden, the plaintiff must then "demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext" for retaliation. *Id.*

DWSS argues that Zakiya cannot establish a prima facie case of retaliation because she failed to show when and how she reported her sexual harassment allegation and failed to show that she was subjected to any adverse employment action. ECF No. 23 at 9.  DWSS argues that Zakiya never disclosed the details of her harassment to a staff member. *Id.*  DWSS also argues that gossip by her supervisor and colleagues would not reasonably deter Zakiya from engaging in protected activity. *Id.* at 9-10.  And DWSS argues that Zakiya only identified her suspension as an adverse action in her response to interrogatories, but it was not alleged in her amended complaint. *Id.* at 5.  Even so, DWSS argues Zakiya was suspended for a legitimate reason: she made a threatening comment concerning her supervisor Gilbreath. *Id.* at 10.

Zakiya argues that she reported Cordoba-Castillo's conduct to Gilbreath and HR officer Depaoli. ECF No. 24 at 9.  She argues that as a result "vicious rumors were spread and a horribly hostile work environment created." *Id.*  She argues that DWSS poorly handled the incident where police were called, which resulted in her five-day suspension. *Id.* at 9-10.

10

Zakiya has not met her burden to establish a prima facie case of retaliation. Viewing the evidence in the light most favorable to Zakiya, she engaged in protected activity when she told Gilbreath and Depaoli that Cordoba-Castillo sexually harassed her. However, Zakiya has not shown an adverse employment action or a causal link between the two. Zakiya alleges a hostile work environment as her adverse employment action in her amended complaint. During discovery and in her response to DWSS's motion, however, she also argues that her suspension was retaliation for engaging in protected activity. Even if I consider this new theory, Zakiya still has not met her burden to establish a prima facia case.

Zakiya has not described the contents of the "vicious rumors," nor explained who said them and how it could be connected to her reporting sexual harassment to Gilbreath. Accordingly, no reasonable jury could find that the rumors spread about Zakiya amounted to a hostile work environment. Additionally, Zakiya has not demonstrated that the incident involving potential threatening remarks she made to Gilbreath, the subsequent interaction with police, and her suspension are causally linked to her engaging in protected activity.

Even assuming Zakiya was able to establish a prima facie case of retaliation based on her suspension, DWSS has presented a legitimate reason for her suspension. Based on several witness statements and an administrative hearing process, DWSS determined that Zakiya made threatening remarks and was suspended accordingly. Zakiya has not demonstrated a genuine issue of material fact as to whether this reason was pretext for retaliation, especially considering that the suspension was carried out by other DWSS staff without any knowledge that Zakiya engaged in protected activity. I therefore grant DWSS's motion for summary judgment as to Zakiya's retaliation claim.

/ / / /

## V. CONCLUSION

I THEREFORE ORDER that defendant DWSS's motion for summary judgment (**ECF No. 23) is GRANTED.** The clerk of court is instructed to enter judgment in favor of DWSS and against plaintiff Uwimana Zakiya, and to close this case.

DATED this 2nd day of April, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE